UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TORI BELLE COSMETICS, LLC,<br><br>                          Plaintiff,<br><br>           v.<br><br>CYNTHIA MCKNIGHT, *et al*.,<br><br>                          Defendants. | CASE NO. 2:21-cv-00145-RSL<br><br>ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT |

This matter comes before the Court on defendants' "Motion for Summary Judgment and Reasonable Fees and Costs." Dkt. # 53.[1] Plaintiff sells cosmetics and false eyelashes through a network of salespeople it calls "affiliates." The affiliates recruit additional affiliates, earning a portion of the proceeds from a recruit's sales and forming a branching sales team. Plaintiff alleges that defendants, former Tori Belle affiliates, recruited other affiliates, disparaged plaintiff, and used the social media and communication channels they

---

[1] Counsel for defendant Cynthia McKnight filed the motion seeking dismissal of the claims against all defendants, including his client.

On June 30, 2023, defendants filed notice that Tori Belle Cosmetics, LLC, has filed for bankruptcy.

> The stay does not prevent a plaintiff/debtor from continuing to prosecute its own claims nor does it prevent a defendant from protecting its interests against claims brought by the debtor. *Gordon v. Whitmore (In re Merrick)*, 175 B.R. 333, 337–38 (9th Cir. BAP 1994). This is true, even if the defendant's successful defense will result in the loss of an allegedly valuable claim asserted by the debtor. *Martin–Trigona v. Champion Fed. Sav. and Loan Ass'n*, 892 F.2d 575, 577 (7th Cir.1989).

*In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 875 (9th Cir. 2011).

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 1

developed while they were Tori Belle affiliates for the benefit of a competing venture, Globallee, Inc. Plaintiff asserts claims of breach of contract, breach of the duty of good faith and fair dealing, tortious interference, violations of the Defend Trade Secrets Act, conversion, and civil conspiracy. Defendants seek dismissal of all of plaintiff's remaining claims and sanctions against defendant and its Chief Executive Officer, Laura Hunter.

      Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose

resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and taking the evidence in the light most favorable to the non-moving party, the Court finds as follows:

## BACKGROUND

Tori Belle terminated its relationship with defendant Cynthia McKnight on January 7, 2021, apparently for sharing a screenshot of an intra-Tori Belle conversation with another Tori Belle affiliate and for unspecified "breaches of confidentiality disparaging [sic] Tori Belle and other unprofessional behavior." Dkt. # 68-1 at 108. At the time, Ms. McKnight had approximately 25,000 people in her downline sales team with whom she was routinely communicating through various channels, including a private Facebook group called "Kicking Lashes and Taking Names," for which she was an administrator.[2] Ms. McKnight posted a notice of her termination on "Kicking Lashes," stated that she would be closing down the group, recommended that members join "Lash Headquarters," another FaceBook group run by Tori Belle affiliate Julie Kelly, and provided her email

---

[2] Ms. McKnight was contractually required to develop a team website – in this case, the Kicking Lashes private Facebook group – for the purposes of connecting with, communicating with, and training Tori Belle affiliates. Dkt. # 68-1 at 45, 70, and 284.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 3

address in case anyone wanted to stay connected. Dkt. # 54-9 at 1. Defendants Yocom and Miraya posted similar messages when they were terminated. Dkt. # 57 at ¶ 7; Dkt. # 55 at ¶ 5.

Tori Belle maintains an internet-based communications site called "Backstage" in which it stores training materials, reports, team information, contact information for affiliates and customers, company updates, product information, sales data, commissions reports, and pay histories. Dkt. # 68-1 at ¶ 29. Ms. McKnight accessed Backstage eight times in the week following the termination of her relationship with Tori Belle. Dkt. # 68-1 at 311. Ms. Hunter presumes that Ms. McKnight was accessing the affiliate contact lists stored therein and further speculates that she used those lists to solicit affiliates to leave Tori Belle in favor of Globallee, which Tori Belle describes as a competitor. Dkt. # 68-1 at ¶¶ 21-22. As evidence, Ms. Hunter states that a few weeks after leaving Tori Belle, Ms. McKnight and the other defendants changed their personal Facebook profile background and made posts on their personal social media pages indicating a new affiliation.[3] Tori Belle served Ms. McKnight with a copy of the complaint in this matter the day she was scheduled to announce the name of the company with which she would be moving forward. Dkt. # 54 at ¶ 23. Defendants subsequently used their personal Facebook pages to

---

[3] Ms. Hunter asserts that Ms. McKnight had been in contact with Globallee while she was still a Tori Belle affiliate. Dkt. # 68-1 at ¶ 47. While the relevance of this assertion is unclear where non-competition agreements are invalid, the evidence on which Ms. Hunter relies – namely the fact that on February 10, 2021, Ms. McKnight attended a Facebook live video sporting the magenta background of a Globallee representative – does not suggest that Ms. McKnight was in communication with Globallee more than a month earlier.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 4

develop a multi-level marketing program and conduct sales activities for Globallee.[4] At least twelve Tori Belle affiliates, in addition to the four named defendants, ended up working for Globallee in this time frame. Dkt. # 68-1 at ¶ 49.

Ms. Hunter asserts that Ms. McKnight disparaged Tori Belle on the Kicking Lashes page and elicited or encouraged disparaging statements made by third parties. Dkt. # 68-1 at ¶¶ 59 and 62. Ms. Hunter also asserts that Tori Belle reasonably expected that it would obtain economic benefit from the affiliates who left and their downstream sales forces – existing and prospective. Dkt. # 68-1 at ¶¶ 68-69. Ms. Hunter is concerned that Ms. McKnight may have converted the Kicking Lashes Facebook group (and the training materials contained therein) into a Globallee training site instead of closing down the group as promised. Dkt. # 68-1 at ¶¶ 77 and 79. In the alternative, if Ms. McKnight did close down the Kicking Lashes group, Ms. Hunter accuses her of wrongfully destroying Tori Belle's property. Dkt. # 68-1 at ¶ 82. Finally, Ms. Hunter accuses the named defendants of entering into an agreement to perform the breaches of contract and torts identified in the complaint. Dkt. # 68-1 at ¶¶ 87-92.

//

---

[4] Ms. Hunter asserts that Ms. McKnight used the Kicking Lashes group page on January 31, 2021, to advertise her work for Globallee and that this post engendered hundreds of reactions and comments. Dkt. # 68-1 at ¶¶ 42-43. The document attached as support does not contain any indication that it was posted on the Kicking Lashes page, however, nor is there any explanation for the text bubble appended just below the post. Dkt. # 68-1 at 256. Ms. McKnight states that she did not post on Kicking Lashes after she announced her termination from Tori Belle and affirms that the post Ms. Hunter describes was made on her personal Facebook page. Dkt. # 54 at ¶ 20; Dkt. # 72 at ¶ 4.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 5

# DISCUSSION

## A.     Rule 56(d) Request for Continuance

Tori Belle seeks additional time to conduct discovery before defendants' motion for summary judgment is ruled upon. Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

The motion for summary judgment was filed in December 2022, seven months after discovery opened. There is no indication that plaintiffs served any discovery requests or sought to depose defendants. Discovery is now closed. The Court declines to further defer consideration of the motion.

## B.     Motion to Strike

Exhibit N to the Declaration of Laura Hunter has been withdrawn and has not been considered.

Defendants also object to consideration of Exhibit G to Ms. Hunter's declaration, which is described as a spreadsheet which Ms. Hunter and her husband, the chief technical officer of Tori Belle, downloaded from Backstage. The spreadsheet is likely inadmissible in its current form (the conditions of admissibility set forth in Fed. R. Ev. 803(6) have not been established by the record custodian), but the information has been considered because

it is likely that some version of the data would be admissible at trial. Defendants' relevance objection to Exhibit G is considered in context below.

Ms. Hunter's reference to "multiple messages that people left because of what [Ms.] McKnight was saying about me" (Dkt. # 68-1 at ¶ 61) has not been considered. It is both irrelevant and inadmissible hearsay. The Court has also not considered Ms. Hunter's various legal conclusions and suppositions that are unsupported by facts about which she has personal knowledge.

**C. Breach of Contract**

Section 5.4 of the Affiliate Agreement precludes an affiliate from recruiting any Tori Belle affiliate or customer to participate in another direct sales or network marketing opportunity. The only evidence of solicitation are the goodbye posts published in the Kicking Lashes Facebook group. Those posts simply let defendants' team know that their relationships with Tori Belle had been terminated, expressed gratitude and love, advised team members how they could transfer to another group, and provided personal email addresses in case anyone wanted to reach out. They in no way encouraged anyone to leave Tori Belle or join Globallee: in fact, all of the evidence suggests that defendants had not determined where they were going or what they would be doing when they wrote their goodbye messages. There being on evidence of solicitation, the non-solicitation claim fails.

Section 11 of the Affiliate Agreement designates as confidential contact information regarding customers, any and all information regarding affiliates (including their upline and downline affiliations), business materials, promotions, compensation

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 7

plans, and all information contained in a password protected area of Tori Belle's website (including training materials). The contract prohibits affiliates from disclosing confidential information to third parties, using the information to compete with Tori Belle, or using the information to convince an affiliate or customer to alter their business relationship with Tori Belle. This aspect of the breach of contract claim survived the motion to dismiss only as to Ms. McKnight's alleged use and/or disclosure of proprietary customer and affiliate lists. Dkt. # 43 at 8-12. At this stage of the proceeding, plaintiff must come forward with evidence to support its supposition that when Ms. McKnight accessed Backstage in the days following her termination, she downloaded customer and affiliate lists or otherwise used the information for Globallee's benefit. It has not done so. There are numerous legitimate reasons why Ms. McKnight might access Backstage, and plaintiff offers nothing to guide the jury's selection between a lawful and an unlawful purpose. In the absence of any evidence of solicitation, Ms. Hunter's unsupported supposition about Ms. McKnight's actions and intentions does not raise a triable issue of fact.

With regards to the contractual prohibition against disparagement, plaintiff relies entirely on the allegations of the complaint, this time parroted by Ms. Hunter in a declaration. Ms. Hunter does not identify a single statement that could be considered disparaging, instead simply asserting that she and Tori Belle were disparaged by Ms. McKnight. Dkt. # 68-1 at ¶ 59 and 61. This is insufficient to raise a triable issue of fact.[5]

---

[5] Plaintiff's failure to produce any evidence of disparagement is also fatal to its claim for breach of the duty of good faith and fair dealing.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 8

Even if plaintiff had been able to produce some evidence of a solicitation, breach of confidentiality, and/or disparagement, there is nothing to tie the $8,858,636 in losses set forth in Exhibit G to such conduct. Ms. Hunter states that Exhibit G is a list of Ms. McKnight's downline affiliates who left Tori Belle. She has no idea why any of the over 5,500 individuals listed on Exhibit G left.[6] Some, like defendants Lyndsey Yocum and Amber Miraya, were terminated by Tori Belle. Others, like defendant Ashley Burdine, left Tori Belle because the company had fired her team leader and friends, because the company had unilaterally changed its compensation plan for affiliates, and/or because the company's products were causing injury to its customers. At least 15% of the people plaintiff claims left as a result of statements made and actions taken by Ms. McKnight at the end of her relationship with Tori Belle left well before Ms. McKnight made any such statements or engaged in any such conduct. Another 20-25% left Tori Belle before Ms. McKnight had determined where she was going to go or what she was going to do. Plaintiff has not elicited any testimony that remotely suggests that a single affiliate left because Ms. McKnight disparaged Tori Belle, encouraged him or her to leave, or used Tori Belle's confidential materials. The most Ms. Hunter can say is that some of the departed affiliates went to work with Globallee. She asserts that a woman named Beth and a woman named Jasmine left Tori Belle to join Ms. McKnight's team at Globallee (Dkt. # 68-1 at ¶ 21), but these names appear numerous times in Exhibit G and it is impossible to

---

[6] The summary box that accompanies the list indicates that 6,785 affiliates in Ms. McKnight's downline left Tori Belle between December 1, 2020, and April 30, 2021, and that 989 affiliates left in December 2020. There are, however, no line items associated with the December departures.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 9

determine when these people left Tori Belle, why they left, or whether any of the claimed damages are associated with their departures. She also lists twelve women who participated in a video conference on February 10, 2021, with a Globallee-magenta background on their Facebook profiles, and asserts that they were former Tori Belle affiliates. Dkt. # 68-1 at ¶ 49. Only seven of those women are listed in Exhibit G, however, and there is no indication why they left Tori Belle in favor of Globallee. In short, even if Exhibit G would be admissible at trial, plaintiff has failed to raise a genuine issue of fact regarding causation. Tori Belle is therefore unable to establish that any potential breach of contract resulted in damages, and defendants are entitled to judgment as a matter of law on this claim.

**D. Tortious Interference**

In order to establish a tortious interference claim, plaintiff must show "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157 (1997). As discussed above, there is no evidence that defendants used improper means to interfere with Tori Belle's relationships with its independent contractors, nor is there evidence of damages causally related to such conduct. This claim fails as a matter of law.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 10

### E. Defend Trade Secrets Act

The Defend Trade Secrets Act confers a private cause of action on "an owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). "Misappropriation" is defined to include "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret . . . ." 18 U.S.C. § 1839(5). This claim mirrors the breach of confidentiality provision claim discussed above, and the Court reaches the same conclusion. There is no evidence that defendants disclosed or used Tori Belle's confidential materials, nor is there evidence of damages arising from such conduct.

### F. Conversion

A cause of action for conversion "is founded upon the unwarranted interference with [plaintiff's] right to the possession of [plaintiff's] property." *Judkins v. Sadler-MacNeil*, 61 Wn.2d 1, 3 (1962). Plaintiff's claim is based on an asserted property interest in Kicking Lashes, the private social media group defendants used to communicate with and train other Tori Belle affiliates. Defendants were required to establish such a venue under the terms of the Affiliate Agreement. There is evidence that, upon their departure from Tori Belle, defendants closed down Kicking Lashes and declined to make Ms. Hunter or another Tori Belle affiliate an administrator, effectively preventing Tori Belle from

using the forum. The conversion claim is not based on defendants' retention of their personal Facebook profiles and friends/followers, but rather on their failure to turn over the administrative keys to a private Facebook group they had developed and used on Tori Belle's behalf.

Ms. McKnight was contractually required to communicate with her downline, and the Kicking Lashes group was the way in which she chose to satisfy that obligation. While Tori Belle has an undisputed interest in its confidential training materials and affiliate lists, the demise of the Kicking Lashes group in no way divested it of that information, and Tori Belle makes no attempt to show that it had any sort of separate property or proprietary interest in the Facebook group itself. Nor has Tori Belle shown that the alleged interference was unwarranted given that Ms. McKnight was required to deactivate her Tori Belle social media profile and/or pages once her relationship with Tori Belle was terminated. Dkt. # 68-1 at 47.

Finally, plaintiff makes no attempt to identify any damages arising from the loss of the Facebook group. Conversion of chattel is generally remedied by the return of the property or payment of the fair market value of the property. *See Potter v. Wash. State Patrol*, 165 Wn.2d 67, 79 (2008). Plaintiff has not requested the return of the property in the Second Amended Complaint, nor has it offered evidence tending to show the fair market value of Kicking Lashes. The conversion claim therefore fails as a matter of law.

ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 12

**G. Civil Conspiracy**

In order to succeed on a civil conspiracy claim, the evidence of the alleged conspiracy, including evidence of an agreement to grow Globallee's business through unlawful means (such as through a breach of contract), must be clear, cogent, and convincing. *Woody v. Stapp*, 146 Wn. App. 16, 22 (2008). A "mere suspicion or commonality of interests is insufficient to prove a conspiracy" under Washington law. *All Star Gas, Inc. v. Bechard*, 100 Wn. App. 732, 740 (2000). In the absence of evidence suggesting that defendants used unlawful means to promote Globallee's products and grow Ms. McKnight's downline, much less any evidence that the named defendants agreed to or otherwise conspired to bring about such conduct, the claim fails as a matter of law.

**H. Sanctions**

Defendants seek an award of sanctions against both Tori Belle and Ms. Hunter for abusing the judicial process by (1) filing this litigation in bad faith to make an example of defendants and cow remaining affiliates and (b) pursuing the litigation without even attempting to prove the claims asserted, instead preferring to fabricate, rather than discover, supporting evidence. Tori Belle is now under the bankruptcy court's protection. Because sanctions are being sought against both Tori Belle and Ms. Hunter for the same conduct, the Court will hold the request in abeyance until the bankruptcy petition is resolved and/or the bankruptcy stay is lifted.

For all of the foregoing reasons, Tori Belle's claims against defendants are hereby DISMISSED with prejudice. The Clerk of Court is directed to strike the evidentiary hearing currently scheduled for July 17, 2023, from the Court's calendar and enter a statistical termination in this case. Such termination is entered solely for the purpose of removing the case from the Court's active calendar. Defendants may file a notice within 14 days of the lifting of the bankruptcy stay to renew their request for sanctions, at which point the evidentiary hearing will be rescheduled.

Dated this 5th day of July, 2023.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge